UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

           Plaintiff,

v.                                              1:23-cv-01562 (AMN/MJK)

$93,530.59 in U.S. CURRENCY and
ASSORTED JEWELRY, VL: $33,000.00,

           Defendants,

ESTATE OF ANTHONY J. ZAREMSKI,

           Claimant.

---

**APPEARANCES:**                               **OF COUNSEL:**

**HON. CARLA FREEDMAN**             **ELIZABETH A. CONGER, ESQ.**
United States Attorney for the         Assistant United States Attorney
Northern District of New York
100 South Clinton Street
Syracuse, New York 13261
*Attorneys for Plaintiff*

**HACKER MURPHY LLP**               **JAMES C. KNOX, ESQ.**
28 Second Street                         **JULIE A. NOCIOLO, ESQ.**
Troy, New York 12180              **ALISHAH ELENA BHIMANI,**
*Attorneys for Claimant*               **ESQ.**

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I. INTRODUCTION**

On December 12, 2023, Plaintiff United States of America ("Government") commenced this action *in rem* seeking civil forfeiture of $93,530.59 in U.S. currency and assorted pieces of jewelry with a collective appraised value of $33,000.00 (together, "Defendant Property") as property traceable to violations 21 U.S.C. §§ 841 and 846, pursuant to 21 U.S.C. § 881(a)(6) and

Rule G of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"). Dkt. No. 1 ("Verified Complaint"). On January 9, 2024, the Estate of Anthony J. Zaremski ("Claimant") filed a verified answer. Dkt. No. 6 ("Verified Answer").

Presently before the Court is the Government's motion to strike the Answer pursuant to Rule G(8)(c) of the Supplemental Rules. Dkt. No. 9 ("Motion"). For the reasons set forth below, the Motion is denied.

## II.   BACKGROUND[1]

### A. The Government's Allegations

This matter arises from a law enforcement investigation into a drug trafficking conspiracy in New York's Capital Region. Dkt. No. 1 at ¶ 8. Beginning in May 2022, law enforcement surveilled an apartment in Guilderland frequented by alleged members of the conspiracy and purportedly used as a "stash house." *Id.* at ¶¶ 8–9. Law enforcement also conducted controlled purchase of drugs nearby. *Id.* at ¶ 10. Law enforcement observed Anthony Zaremski ("Decedent") accessing the apartment and believed him to be a leader of the conspiracy. *Id.* at ¶¶ 11–12.

On May 23, 2023, law enforcement executed federal search warrants at various locations believed to be associated with the conspiracy.[2] *Id.* at ¶ 13. At the apartment in Guilderland, law

---

[1] Unless otherwise indicated, relevant information has been drawn from the Verified Complaint and the papers submitted by the parties in connection with the Motion. Dkt. Nos. 1, 9, 13, 18.

[2] As a result, authorities also arrested several individuals. Two individuals were charged with, *inter alia*, conspiracy to distribute and possess with intent to distribute numerous controlled substances, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and 841(b)(1)(B), subsequently pled guilty, and were sentenced by this Court in recent months. *See United States v. Bartley*, Case No. 1:24-cr-00223 (N.D.N.Y.); *United States v. Luizzi*, Case No. 1:24-cr-00101 (N.D.N.Y.). A third individual has also been indicted. *See United States v. Jones*, Case No. 1:25-cr-00020 (N.D.N.Y.). The Government has also commenced additional civil forfeiture actions arising from the execution of these federal search warrants and obtained default judgments therein. *See United States v. $11,100.00 in U.S. Currency*, Case No. 1:23-cv-01416 (N.D.N.Y.), Dkt. Nos.

enforcement recovered significant quantities of drugs, more than two dozen firearms, and ammunition. *Id.* at ¶¶ 23–24.

At another apartment, in Clifton Park, law enforcement officers announced their presence, used a device to gain entry, and exchanged gunfire with Decedent. *Id.* at ¶¶ 14–16. Decedent shot and injured two law enforcement officers before being killed by return fire. *Id.* at ¶¶ 16–17. A subsequent search of the apartment recovered drugs, drug paraphernalia, and the Defendant Property. *Id.* at ¶¶ 18–20.

The Verified Complaint further alleges that Decedent, who was approximately 23 years old at the time of his death, resided in an apartment connected to another alleged leader of the conspiracy, Jabree Jones, and operated a motor vehicle registered to Jones. *Id.* at ¶¶ 25–26, 30. Furthermore, the Verified Complaint alleges that several months prior to his death, on January 20, 2023, Decedent engaged in a high-speed chase with law enforcement in Jones' vehicle, after which law enforcement took Decedent into custody and recovered $77,400. *Id.* at ¶¶ 26–27. The Verified Complaint also alleges that Decedent had numerous arrests and charges related to controlled substances, and at least one conviction. *Id.* at ¶¶ 28–30.

### B. Procedural History

#### 1. Initial Action

On June 22, 2023, in a separate action in this District, the Government filed a verified complaint seeking forfeiture *in rem* of the $77,400 that had been recovered when law enforcement took Decedent into custody on January 20, 2023. *See United States v. $77,400.00 in U.S. Currency*, Case No. 1:23-cv-00756 (N.D.N.Y.) ("Initial Action"), Dkt. No. 1. On August 11,

---

13–14; *United States v. Assorted Jewelry, VL: $39,100.00*, Case No. 1:23-cv-01435 (N.D.N.Y.), Dkt. Nos. 13, 15.

2023, Decedent's mother filed a verified answer on behalf of Decedent's estate.[3]  Initial Action Dkt. No. 5.  On August 30, 2023, the Government moved to strike the verified answer on the ground that Decedent's estate had not filed a verified judicial claim in compliance with Rule G(5) of the Supplemental Rules and thus lacked statutory standing.  Initial Action Dkt. No. 8.  Decedent's estate—represented by the same counsel as Claimant here—opposed.  Initial Action Dkt. Nos. 10–11.

On March 19, 2024, United States Senior District Judge Frederick J. Scullin denied the Government's motion to strike.  Initial Action Dkt. No. 15.  In a lengthy opinion, Judge Scullin did not condone the failure of Decedent's estate to file a verified judicial claim.  *Id.*.  However, given the "preference to adjudicate cases on their merits rather than procedural default" and pragmatic case management considerations, Judge Scullin exercised his discretion to deny the Government's motion.  *Id.* at 24–27.

2. **Instant Action**

Prior to the commencement of this action, on September 15, 2023, Decedent's estate filed verified administrative claims in connection with, *inter alia*, the Defendant Property.  Dkt. No. 9-2 at ¶ 3; Dkt. No. 13-2.

On December 12, 2023, the Government commenced this action.  Dkt. No. 1.  An arrest warrant was issued the next day and executed on December 20, 2023.  Dkt. Nos. 2, 7.  On

---

[3] The claimant in the both the Initial Action and the instant action is Decedent's estate.  Initial Action Dkt. No. 15 at 4 & n.2.  [However, prior to the commencement of the Initial Action, Decedent was still alive and had submitted, himself, a verified administrative claim for the property at issue.  Initial Action Dkt. No. 10.  The subsequent judicial forfeiture proceeding commenced weeks after Decedent's death and prior to the appointment of Decedent's mother administratrix of Decedent's estate.  *Id.*  Decedent's mother was subsequently appointed administrator of Decedent's estate.  *Id.*  In the instant action, Decedent's mother had already been appointed administratrix, prior to filing the administrative claim on behalf of Claimant and prior to the commencement of this action.  Dkt. No. 13-2.]

December 15 and 18, 2023, the Government served a notice, the Verified Complaint, and the arrest warrant on four potential claimants (including counsel for Claimant) at their last known addresses via certified and regular mail.  Dkt. Nos. 3–4.  Beginning on December 16, 2023, the Government also published public notice of this action for thirty consecutive days on an official government forfeiture website (www.forfeiture.gov).  Dkt. No. 8.  On January 9, 2024, Claimant filed a brief verified answer ("Verified Answer").  Dkt. No. 6.

Claimant has not filed a verified judicial claim in this action, and the deadline for potential claimants to do so was, according to the Government, January 19, 2024.  *See generally* Docket Sheet; Dkt. No. 9-1 at 6.  As a result, and as it did in the Initial Action, the Government has moved to strike Claimant's Verified Answer in this action for lack of statutory standing.  Dkt. No. 9.  Following an extension of time to respond, Dkt. Nos. 11–12, Claimant's opposition, Dkt. No. 13, and the Government's reply, Dkt. No. 18, the Motion is now before the Court.

**III.     DISCUSSION**

Because the parties already have the benefit of Judge Scullin's lengthy opinion, the Court will not spill further judicial ink detailing the applicable procedural law.  *See* Initial Action Dkt. No. 15.  Simply put, "[i]n order to contest a governmental forfeiture action, claimants must have both standing under the statute or statutes governing their claims and standing under Article III of the Constitution as required for any action brought in federal court."  *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999) (citation omitted).  As relevant here, Claimant needed to timely file a verified judicial claim in compliance with the Supplemental Rules to establish statutory standing.  *See also* 18 U.S.C. § 983(a)(4)(A); *accord United States v. Vazquez-Alvarez*, 760 F.3d 193, 197 (2d Cir. 2014).  Claimant never did so.

5

As a result, the Motion argues that Claimant lacks statutory standing and the Verified Answer should be stricken pursuant to Rule G(8)(c) of the Supplemental Rules.[4] Dkt. No. 9-1 at 9–12. In opposition, Claimant argues that this Court should exercise its discretion, deny the Motion, and adjudicate this action on the merits, by either (i) accepting the previously filed verified administrative claim or the Verified Answer as the requisite verified judicial claim, or (ii) permitting Claimant to file a verified judicial claim *nunc pro tunc*. Dkt. No. 13 at 5–8. Claimant sets forth an equitable argument in support of its position. *Id.* at 5–7. In reply, the Government reasserts that Claimant lacks statutory standing to contest forfeiture and further argues that Claimant has not provided a meritorious reason for failing to submit a verified judicial claim. Dkt. No. 18 at 5–9.

The Court is troubled by Claimant's failure to file a verified judicial claim in this action, particularly given the earlier proceedings in the Initial Action. The primary problem for Claimant, who is represented by the same counsel both here and in the Initial Action, is that the same procedural mistake was made in the Initial Action—and was identified by the Government— months before it was repeated here. In the Initial Action, the Government filed a verified complaint in June 2023, Decedent's mother filed a verified answer on behalf of Decedent's estate in August 2023, and, that same month, the Government moved to strike because no verified judicial claim had been filed and thus Decedent's estate lacked statutory standing. Initial Action Dkt. Nos. 1, 5, 8. In opposition to the Government's motion to strike, Claimant's counsel made a submission that ran to more than 30 pages in December 2023. Initial Action Dkt. Nos. 10–11.

---

[4] In the Initial Action, Judge Scullin determined that there was a *prima facie* basis for Article III standing. *See* Initial Action Dkt. No. 15 at 11–12. The Motion does not challenge Claimant's Article III standing in the instant action.

That same month, the Government commenced this action. Dkt. No. 1. According to the Government, the deadline to file a verified judicial claim was January 19, 2024. Dkt. No. 9-1 at 6. Prior to this deadline, Claimant's counsel received repeated notice of this procedural requirement to contest forfeiture. *See, e.g.,* Dkt. No. 2 at 2 ("All persons asserting an interest in the Defendant Property . . . must file a verified claim with the Clerk of this Court pursuant to Rule G(5) of the Supplemental Rules. . . . In addition, any person having filed such a claim shall also serve and file an answer to the complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure within twenty-one (21) days after filing the claim."); Dkt. No. 3; Dkt. No. 9-2 at 9 ("If you believe you have a right, title and/or legal interest in or to the property, you must file a claim with the United States District Court. . . . Please note that Rule G(5)(b) requires a claimant to file an answer to the Verified Complaint or a motion under Rule 12 within 21 days after filing a claim."); Dkt. No. 8 at 2 ("Any person claiming a legal interest in the Defendant Property must file a verified Claim with the court . . . and an Answer to the complaint or motion under Rule 12 of the Federal Rules of Civil Procedure within 21 days thereafter."); *see also* Initial Action Dkt. No. 2 at 2 ("All persons asserting an interest in the defendant currency are required to file a claim in the Clerk's Office and to answer the complaint within the times above fixed"); Initial Action Dkt. No. 3; Initial Action at Dkt. No. 4 at 2 ("The verified Claim and Answer must be filed with the Clerk of the Court[.]"). Yet instead of filing a verified judicial claim, Claimant filed only the Verified Answer on January 9, 2024, Dkt. No. 6, and has filed no verified judicial claim since.

Beyond repeated notice of the requirement to file a verified judicial claim, Claimant also had notice of the Government's position that there is no statutory standing in the absence of such a claim and the authority supporting the Government's position. *See, e.g.,* Initial Action Dkt. No. 8-1 at 11 ("Where no verified claim has been filed, the filing of an answer alone will not suffice

7

to establish statutory standing.") (collecting cases); *id.* at 17 ("[T]he United States respectfully moves this Court to strike the Answer . . . pursuant to Rule G(8)(c) of the Supplemental Rules for lack of statutory standing, as [Decedent's estate] has failed to file a verified claim."). Decedent's estate even submitted a lengthy opposition to this motion in the Initial Action, weeks before filing the Verified Answer here—and nearly a month before the apparent deadline here to file a verified judicial claim. In that opposition, Decedent's estate did not provide an explanation for the failure to file a verified judicial claim. Initial Action Dkt. Nos. 10–11. Decedent's estate instead contended that the earlier verified administrative claim was sufficient and argued for adjudication on the merits on equitable grounds. *See, e.g.,* Initial Action Dkt. No. 10 at 2.

Here again, Claimant again provides no explanation for the failure to file a verified judicial claim, *see generally* Dkt. No. 13, contends that the earlier verified administrative claim is sufficient, *see, e.g.,* Dkt. No. 13-1 at ¶ 4, and further argues that the Court "should exercise its discretion to adjudicate the claimant estate's claim on the merits," Dkt. No. 13 at 6. Claimant goes on to assert that, should the Court do so, the Government "will not be prejudiced," "the length of any delay is not substantial," and "the claimant estate has acted in good faith." *Id.* at 6–7. This argument appears to relate to excusable neglect. *See, e.g., United States v. Starling*, 76 F.4th 92, 102 (2d Cir. 2023) ("[T]he excusable neglect standard [ ] considers 'the danger of prejudice to the nonmovant, the length of the delay and its impact on proceedings, the reason for the delay including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'") (citation omitted). Claimant, however, faces several obstacles to successfully making an excusable neglect argument.[5]

---

[5] In the Initial Action, Judge Scullin determined that because Decedent's estate "does not seek to file a late verified judicial claim, excusable neglect, which is concerned with whether a court

First, as discussed, Claimant does not actually provide any reason for the delay in filing a verified judicial claim. *See, e.g., Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003) ("[D]espite the flexibility of 'excusable neglect' and the existence of the four-factor test in which three of the factors usually weigh in favor of the party seeking the extension, we and other circuits have focused on the third factor: 'the reason for the delay, including whether it was within the reasonable control of the movant.'") (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)); *United States v. $541,395.06 U.S. Currency*, No. 10-cv-6555, 2012 WL 3614294, at *4 (W.D.N.Y. Aug. 21, 2012) (noting that when analyzing excusable neglect, "[t]he Second Circuit focuses particularly on the reason for the delay") (citation omitted).

Second, "[i]n general, excusable neglect does not include a failure to abide by court rules that are 'entirely clear.'" *United States v. Conolly*, 694 F. App'x 10, 13 (2d Cir. 2017) (citation omitted); *see also Silivanch*, 333 F.3d at 366–67 ("We have noted that the equities will rarely if ever favor a party who 'fail[s] to follow the clear dictates of a court rule' and held that where 'the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose[.]'") (first alteration in original) (quoting *Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 250 (2d Cir. 1997)) (additional citations omitted); *but see Starling*, 76 F.4th at 100 (noting that a late "claim against the seized funds [is] ordinarily governed by the 'excusable neglect' standard"). Claimant does not argue that Supplemental Rule G(5) is unclear and, moreover, Claimant and Claimant's counsel were on notice, prior to the filing of the Motion, that a verified judicial claim is required. *See, e.g.,* Initial Action Dkt. Nos. 8, 15–16.

---

should accept a late filing . . . is inapplicable." Initial Action Dkt. No. 15 at 21 (citation omitted). Here, in contrast, Claimant is seeking such relief. Dkt. No. 13 at 4, 8.

9

Third, as a general matter, "cases discussing motions to strike claims under Supplemental Rule G favor strict adherence to the rules and generally do not excuse even technical non-compliance with the rules." *Starling*, 76 F.4th at 100 (quoting *United States v. $22,050.00 U.S. Currency*, 595 F.3d 318, 322 (6th Cir. 2010)) (additional citation omitted); *see also United States v. $177,100.00 U.S. Currency*, No. 19-cv-6093, 2020 WL 5810012, at *2 (W.D.N.Y. Sept. 30, 2020) ("Strict compliance with the rules is generally required.") (quoting *United States v. $5,227.00 U.S. Currency*, No. 12-cv-6528, 2013 WL 2450733, at *1 (W.D.N.Y. June 5, 2013)) (additional citation omitted).

Nonetheless, the unique facts of this case present significant equitable considerations that weigh against granting the Motion. Indeed, excusable neglect is "at bottom an equitable [inquiry], taking account of all relevant circumstances surrounding the party's omission." *Silivanch*, 333 F.3d at 366 (quoting *Pioneer*, 507 U.S. at 395). First, while this Court has accepted guilty pleas from two participants in the same conspiracy in which Decedent allegedly participated, and imposed sentence on them, *see Bartley*, Case No. 1:24-cr-00223, Dkt. No. 34; *Luizzi*, Case No. 1:24-cr-00101, Dkt. No. 43, Decedent was never criminally charged with being a member of that conspiracy and his involvement, if any, has not been established at this stage. *See Starling*, 76 F.4th at 103 ("[Claimant] was never charged with a crime, let alone convicted. She should have the opportunity to show that she was an innocent owner.") (citations omitted); 18 U.S.C. § 983(d)(1) ("An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute.").

It may well be that the Government can readily prove that the Defendant Property is "proceeds traceable to violations of Title 21, United States Code, Sections 841 and 846." Dkt. No. 1 at 1. Indeed, the Complaint alleges that Decedent was a leader of the aforementioned conspiracy,

*id.* at ¶ 12; frequented the conspiracy's stash house in Guilderland (from which law enforcement recovered significant quantities of drugs and firearms), *id.* at ¶¶ 11–12, 23–24; had additional connections to individuals allegedly associated with the conspiracy, *id.* at ¶¶ 25–26; had drugs in his apartment as well as numerous prior drug charges, *id.* at ¶¶ 19, 28–30; possessed more than $170,000 in cash during an approximately four-month period, a seemingly uncommon sum for a 23-year-old, *id.* at ¶¶ 14, 20, 26–27; and initiated a shootout with law enforcement officers, two of whom were injured, *id.* at ¶¶ 16–17. At this early stage, however, these are simply allegations whose merits should be adjudicated. *See, e.g., Starling*, 76 F.4th at 101 ("[W]e do not perceive 'anything functionally different about civil forfeiture cases that compels us to treat untimely responses in these cases differently than untimely responses in all other civil cases.' . . . To the contrary, civil forfeiture procedure magnifies the importance of deciding such cases on the merits rather than by default. Civil forfeiture can 'enable the government to seize . . . property without any predeprivation judicial process and to obtain forfeiture of the property even when the owner is personally innocent.'") (first quoting *$22,050.00 U.S. Currency*, 595 F.3d at 323; and then quoting *Leonard v. Texas*, 580 U.S. 1178, 1179 (2017)); *but see United States v. $23,000 in U.S. Currency*, 356 F.3d 157, 163 (2d Cir. 2004) ("[F]iling a verified statement is normally 'a prerequisite to the right to file an answer and defend on the merits.'") (quoting *United States v. One Dairy Farm*, 918 F.2d 310, 311 (1st Cir. 1990)).

Additionally, while Claimant is Decedent's estate, the Court is cognizant that estates must act through people. *See, e.g.,* 31 Am. Jur. 2d *Executors & Administrators* § 983 ("A decedent's estate can act only by and through the decedent's personal representative."). Granting the Motion would strike Claimant's answer because Decedent's mother filed only one verified claim in the months following the violent death of her son, instead of the two verified claims that are required.

11

The Court finds that barring Decedent's mother, in her representative capacity, from expressing an interest in property connected to Decedent on procedural grounds is too harsh a result in this case, particularly given that Claimant's verified administrative claim, Verified Answer, and timely opposition to the Motion have sufficiently demonstrated an interest in Defendant Property. *See United States v. One 1987 Jeep Wrangler*, 972 F.2d 472, 481 (2d Cir. 1992) ("[T]his circuit has held that technical noncompliance with the procedural rules governing the filing of forfeiture claims will be excused where there is a sufficient showing of interest in the property.") (citation omitted); *United States v. $175,918.00 in U.S. Currency*, 755 F. Supp. 630, 633 (S.D.N.Y. 1991) ("[N]umerous courts have held that 'where putative claimants have placed the court and the government on notice of their interest in the property and their intent to contest the forfeiture, courts will grant extensions of time, recognizing both the good-faith effort put forth and the lack of prejudice to the government under such circumstances.'") (citations omitted) (collecting cases).

As to other equitable considerations, the Government does not contest its lack of prejudice, that the length of delay is relatively insubstantial, or that Claimant acted in good faith. *See generally* Dkt. No. 18. As to prejudice in particular, the Government has had notice of Claimant's interest in the Defendant Property from the verified administrative claim in September 2023 and the Verified Answer in January 2024, no other claimant has appeared in this action, and the Motion here drew heavily upon the Government's motion to strike in the Initial Action. Dkt. No. 9-2 at ¶ 3; Dkt. No. 6; *compare* Dkt. No. 9, *with* Initial Action Dkt. No. 8. The Court thus finds that these three unopposed factors weigh heavily in favor of Claimant's request. *See $177,100.00 U.S. Currency*, 2020 WL 5810012, at *2 ("Courts typically exercise their discretion when claimants have timely placed the court and government on notice of their interest in the property and intent to contest the forfeiture, recognizing both the good-faith effort put forth and the lack of prejudice

12

to the government under such circumstances.") (quoting *United States v. $3,585.00 U.S. Currency*, No. 18-cv-581, 2019 WL 422660, at *4 (W.D.N.Y. Feb. 4, 2019)).

For all of these reasons, the Court will exercise its discretion and allow the matter to proceed on the merits. *Accord* Dkt. No. 18 at 7–8 (acknowledging that "Judge Scullin, in his rightful discretion, denied the government's motion to strike . . . citing to the overall preference to resolve matters upon the merits.") (citing Initial Action Dkt. No. 15 at 27). The Government's Motion is thus denied. *See United States v. $417,143.48*, 682 F. App'x 17, 19 (2d Cir. 2017) ("'[A] court has discretion in appropriate circumstances to depart from the strict compliance standard' embodied by Rule G(5).") (alteration in original) (quoting *United States v. Amiel*, 995 F.2d 367, 371 (2d Cir. 1993)); Supplemental Rule G, advisory committee's note, subdiv. 8 ("As with other pleadings, the court should strike a claim or answer only if satisfied that an opportunity should not be afforded to cure the defects[.]"). Claimant's request to treat either the verified administrative claim or the Verified Answer as a verified judicial claim is also denied. Dkt. No. 13 at 4. The former includes property that was the subject of another forfeiture proceeding. *Compare* Dkt. No. 13-2 at 2, *with $11,100.00 in U.S. Currency*, Case No. 1:23-cv-01416. The latter fails to identify "the specific property claimed" or "state the claimant's interest in the property." *Compare* Dkt. No. 6, *with* Supplemental Rule G(5)(a)(i).

Claimant's request to file a verified judicial claim *nunc pro tunc*, however, is granted. *See Starling*, 76 F.4th at 101 n.4 ("[W]e [have] recognized that an untimely plaintiff lacks statutory standing '*unless the court grants an extension,*' and our cases have made clear that a *nunc pro tunc* filing is possible.") (emphasis in original) (citation omitted). Claimant is directed to file a verified judicial claim within 14 days of the issuance of this Memorandum-Decision and Order. If so filed, and in compliance with the applicable requirements, *see, e.g.,* Supplemental Rule G(5)(a)(i), such

a verified judicial claim will be accepted *nunc pro tunc*. *See $417,143.48*, 682 F. App'x at 19. Should Claimant fail to file such a verified judicial claim, however, the Government may renew its Motion via letter request.

Additionally, Claimant and its counsel are cautioned that, given the judicial discretion they have been afforded in two separate actions in this District, it is difficult to imagine a scenario in which further procedural deficiencies could be countenanced. *Accord Armstrong v. Sailormen, Inc.*, No. 14-cv-44, 2017 WL 10635747, at *1 (N.D. Fla. Dec. 12, 2017) ("While cats may have nine lives, [those] who are the subject of this order do not. They have been afforded every opportunity by this Court.").

### IV.   CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Claimant file a verified judicial claim *nunc pro tunc*, in compliance with the applicable requirements, within 14 days of the issuance of this Memorandum-Decision; and the Court further

**ORDERS** that the Government's motion to strike, Dkt. No. 9, is **DENIED with leave to renew**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: January 27, 2025
       Albany, New York

Anne M. Nardacci
U.S. District Judge